now to the next case on the docket. We have next the United States versus Carro-Brown, 20-2787. Sorry. Yeah, it's all set. Okay, thank you very much. Ms. Corbett, I understand that you have reserved two minutes for rebuttal? Yes, I have. Okay, please proceed. Good morning. My name is Molly Corbett. I'm with the Federal Public Defender Office in the Northern District of New York, and I represent the appellant, Carro-Brown. The district court abused its discretion in denying the reduction in sentence pursuant to 404B of the First Step Act. It applied a different sentence calculation under the guidelines, recalculated the sentencing range, and failed to accurately account for the jury determinations and lack of jury determination related to the specific offenses of murder, attempted murder, and a conspiracy under New York state law. In recalculating the guideline, the district court turned away from the drug sentencing guidelines and used the murder guideline under 2A1.1. And what exactly was the problem with doing that, specifically? In doing that, Your Honor, it relied on murders that were not specifically attributed to Mr. Brown. Well, wasn't there a finding here that he was a member of the gang and that the gang was violent? Yes. And they weren't. They weren't. And that was also a factor in the earlier sentencing as well. And under those circumstances, why wouldn't the district judge be fully able to hold him accountable for the crimes that were committed in furtherance of the enterprise? The crimes that were included in the jury determination were murder, attempted murder, and conspiracy. Right. The murder and the conspiracy components under New York law did carry a life sentence. Unfortunately, the attempted murder component did not. That seems like that's a different argument. So you were saying he switched from the drug crime to the murder crime. Right. But in fact, when you're doing the guidelines for a RICO offense, you look at the underlying conduct and determine which one is higher. Right? So in this exercise that he's doing where he's deciding, well, if we applied the current guidelines to that conduct, it turns out that the murder-related conduct has a higher offense level. There's nothing wrong with that. I understand we'll talk about whether he calculated the murder-related activity properly. But there's nothing wrong with that calculation. In fact, in his first proceeding, the PSR did that. It looked at the murder-related activity, looked at the drug-related activity, and it determined which one had the higher offense level. Right. By doing that, he did. So that's fine. Right? And so now you're saying the problem is that he assumed that your client had been convicted of murder, participating in an enterprise that had engaged in murder as opposed to one that engaged in attempted murder or conspiracy. Exactly. But was he limited to the findings of the jury? I understand the jury made limited findings. But of course, just like the PSR in the first proceeding could look at what the facts suggested, wasn't he entitled to do that here, too? Well, in this instance, there was no determination as to the specifics of the actual New York offense that he had agreed to commit. So there was a finding that it was murder, attempted murder, or conspiracy involving somebody under the age of 16, I believe, in a felony offense. So in doing so, the judge made additional factual findings that Mr. Brown either had been conspiring in murders or conspiracy to commit a felony with a minor without those findings having been made by the jury. So can I just ask to clarify? I think I understand your argument. But let me just restate it, and you tell me if I'm getting it right. The district court was perfectly entitled to make any of those findings he wanted to to the extent he was not increasing the statutory penalty. So if he's only operating within the guidelines, he can make a finding that he murdered people, conspired, attempted to murder, whatever. But now, for purposes of recalculating the guidelines, you've got to go through not just Chapter 1 and Chapter 2 and Chapter 3. And if we're in Chapter 2, we're applying the murder guideline through the bracketeering, and we've got our offense levels up in the 40s. But you've got to go all the way to 5G1.1, which says whatever your guideline range is, is going to be capped at the statutory max. And because the drug conspiracy with its life dropped out, we have to take the lowest common denominator murder case or murder charge, which would be the 25-year max attempted murder under New York law, so that you're capped at 240. So the guideline range, if one recalculates the original guidelines by only changing, dropping out the old version of the drug conspiracy guidelines, you now wind up at a guideline range of 240 flat. That's correct. Okay, so that's your argument. So he's, the district judge, perfectly entitled to make factual findings within the guidelines world, but to the extent that 5G1.1 imports into its guideline analysis the statutory max that would be applicable. The court can't make findings other than what we know is the minimum the jury made, so that way you've got your cap of 20 years. That's right. And that's what's reflected in the cautionary details of Gennady and the case, the Sixth Circuit case that it relied on in Carado. So then, so in making that additional determination, it exceeded the statutory, what was the statutory limit. Is this the, are you talking about the first sentencing or the second sentencing? I'm talking about the second. And how did this differ from the first? Did he not, did he not make that finding in the first time? He did not make the finding about the specific murder, attempted murder, or, you know, what could actually be attributed to Mr. Brown. Instead, he relied solely on the drug calculations and the drug guidelines. And am I correct that even if he had made those findings in the original sentencing, which would have been perfectly within his purview because we're dealing with the statutory maximum of life, at the time of the first step back consideration, in reconsidering the guidelines, he would be obliged to take notice of the fact that the statutory maximum would have come down to 20 when recalculating the guidelines pursuant to Moore. So at that point, any factual findings, even had he made them at the original sentencing, which it doesn't look like he did, distinguishing among the three types of murder, that would not have had any consequence on what the statutory max would have been. That would have only been the sort of thing, I don't know, I suppose if the three types of murder would have generated different offense levels, then I suppose that would have been fine. But that's not where we are now. Where we are now is figuring out what the new statutory max would have been in determining the calculation under the guidelines. So if that is the case, if that is your position, what is your view as to whether there would be any argument regarding harmlessness? The district court was rather emphatic about the severity of your client's criminal history, particularly shooting people point blank and not killing them only through the fortuity that the gun jammed. Things like that. The court was under the impression that he could have gone down as low as 360 months from 480 and wanted no part of that. Why should we think there's any chance that if the district court knew the proper guideline range was 240 instead of 360 to life, that there's any chance the district court would have had any interest in exercising its discretion to go below 480? Well, I think that that goes to the other component of my argument, which is although that it's not necessary for the district court to consider the 3553A factors, in this case the court did consider a number of the 3553A factors. But it did so in a way that only reflected the negative history of Mr. Brown. So as far as his criminal history, I have put forth that there were mistakes in his criminal history and that there were subsequent... Isn't that water under the bridge, though? Under Moore, we said you don't get to recalculate the guidelines. You don't get to relitigate the original sentencing, except to the extent that the Fair Sentencing Act changes would flow through. So this is not a plenary resentencing, right? You don't get to go back and say, well, we didn't fight criminal history category back at the original sentencing, but we'd like to raise some of those new issues now. We said the district court doesn't have to do that. The district court doesn't have to do that. But under Moore, in Moore and Hernandez, if the court does consider or does use the 3553A factors as guidelines in recalculating or reexamining expired sentencing determinations under 404B, it should do so in a fulsome way that accurately... That's not our law, is it? I mean, I think that it's presumed that the judge... You start off with a presumption that the judge's act under 355A, even when they don't say anything other than I've looked at 355A and I'm sentencing in compliance with that. There's no robotic incantation requirement. And why would that change? Because the judge has singled out a particular factor and emphasized that. Well, there... Judge Walker, I agree that there is no requirement for a robotic incantation. But the reality of this examination and decision by this court in determining not to resentence was that it contained errors. And those errors, I believe, colored the rest of the court's discretion in examining what it would do. So the 3553A factors analysis contained errors. And so it's not that the guidelines calculation we were just talking about is decisive. It's the 3553A. I'm sorry, can you repeat that? So the reason you want to send it back is because of the errors in the 3553A calculation, or consideration. But and the... Yeah, my understanding is that you were arguing that and the guidelines error both. Yes. Okay. But would the... Would one be sufficient without the other? Or somehow both of them together is what leads to the requirement to send it back? One... Well, I believe that the sentence in cap calculation is the most important error. And then the factual determination that Mr. Brown was, in fact, responsible for three murders when he was, in fact, in jail for two and a fugitive for one. So you're making two independent arguments. But I would understand you to saying you think both the errors were made. Either one would justify vacating and remanding. And certainly if we were to agree with you on both points, that would just be built in suspenders reasons to... Right, it would be a true case of destruction of the court's authority under 404B. It is important to me to go back to a recalculation of the drug guidelines as far as how it was affected. Well, and it ought not to, right? If its calculation of the murder guidelines was appropriate, then it would trump whatever you get under the drug guidelines anyway. It would just know that the drug guidelines struck below murder, murder as originally found at the original sentencing. Those guidelines will then drive the bus for RICO. And then what follows is simply a matter of math, 240 months. So would your view then be that in light of that guideline's miscalculation, if we were to agree with you on that, that our precedent would require a vacant remand for the simple fact that the guidelines are supposed to have a certain, I don't know, say gravitational pull. And if the district court had known that the guidelines would be down to 240 instead of 360, then who knows whether the district court might have exercised its discretion in a different way? That is part of the argument, and specifically for this district court judge who has in other 404B resentencing, including life imprisonment cases that are for CCD, has reduced the sentences below. Does that analysis of the gravitational pull, does it apply when the district judge isn't even required to calculate the guidelines in this context? I mean, we usually say that in context where that's a required part of the analysis. Well, one would hope that each of the 33A vectors, including a sentencing range under the guidelines, would have equal balance amongst the court's discretion. But I think Booker is reflective of the fact that the sentencing guidelines have always had gravitational pull. And there's more we said, and more we said you do have to recalculate the guidelines, but only in that limited way that you've laid out here. Add this section to the fair sentencing guidelines. Which would flow through to a new guideline range of 240, not allowing you to recalculate anything else, not allowing you to recalculate or relitigate the criminal history category, but just to the extent that the FSA flowed through, you would yield a guideline range of 240, right? That's correct. You reserved two minutes. Why don't we hear from the government? And, Mr. DeSantis, if I could just impose on you to pick up on that last point. I guess the first question that's not entirely clear to me is, what is the government's position on how the guidelines would have been properly recalculated to the limited extent dictated by Moore in this case? Do you agree that they should have been 240 rather than 360? No, Your Honor. So could you just explain that, please? Your Honor, on page 27 of the brief, I note that the jury made a finding as to the quantity of drugs involved in the left-brain enterprise was 1.5 kilograms. No, no, no. I'm sorry. No, we're not talking about drugs. Murder. Yeah, I'm talking about the statutory max. Because, again, as I read the district court's opinion in the first step act, I thought it was a little jumbled. For one thing, he started to make factual findings about what kind of murder was committed or maybe he thought the jury had made findings. Put that aside. We now know from Davis and all these other cases we can't rely on factual findings about the underlying conduct in the drug cases to keep your drug statutory max at life. Would you agree with that? Or is your view that because the district court made factual findings, the statutory max on the B1A predicate still is life and still drives the RICO statutory max? You know, I might be unfamiliar with the case file you're citing, but my understanding is that we have to look here. The statutory maximum can be determined from either the drug findings or the murder findings. Right, and we know that the B1A has now dropped down to 5 to 40 from 20 to life, right, by virtue of the first step act, right? We can't use the jury finding of 1.5 kilos. That's not an element of the offense. I'm sorry, Your Honor. That's a mistake that I made in my brief because that's correct. My understanding is that the maximum is still life. So I guess I'm just trying to – and that's fair. Maybe that is the case, but I'm trying to understand why that's true. I thought in Davis and in all these cases now the courts have said we have to use an elements-based approach. We can't use a case-by-case fact-based approach. So even though I understand that this was one of those strange cases decided right around Blakely when nobody knew what was going to happen in the future with Booker and the juries were being asked as a precautionary matter to make all sorts of findings, they had a reasonable doubt, and they found 1.5 kilos, it's still not an element. So if we're stuck with an elements approach, it seems like that special jury verdict is surplusage. Again, Your Honor, I may be misunderstanding a lot, but my understanding is the categorical approach still allows you to look at the jury finding as a quantity and to see where you would fall. But the categorical approach, I thought, allows you to determine what are the elements. But if you have special findings, like 1.5 kilos, that don't correspond to any element of any crime, there never was a version of B1A that was triggered by 1.5 kilos, right? Wasn't it 50, Grant? It was 50, and I thought it was 280 or more. Right, so at no point was there ever a threshold called 1.5 kilos. Right, but my understanding is that if you're talking about a case where the sentence is qualifying for a recidivism enhancement, the categorical approach applies, but you still can rely on jury findings to see where you would fall in the B1A category. Even if they're not findings of elements? No, I may be incorrect. I think the bigger point is the one you were making earlier. The judge here made very clear at the end of his decision that even if the guidelines were lowered here, given the severity of Mr. Brown's conduct, he wouldn't have lowered the sentence here. And as far as— Are you saying—I'm sorry, on that last point, are you talking about even assuming that the defense is correct, that your statutory max comes down to 20, and that you're dealing with a guideline range of 240? Are you now making the argument that basically it would have been a harmless error because the district court made it so clear that the defendant's criminal history was so atrocious here that he wasn't going to come down when he knew he could go down to 360? There's certainly no way he was going to come down just because the guideline range was 240. Correct, Your Honor. And again— But what do you do with the gravitational pull argument that the other side's making? Well, I think, Your Honor, if it does—if there's any doubt in the court's mind that a limited remand would be appropriate just to ask the judge, if it was 240, would you have decided—would you have designed to leave? And I don't think that he's entitled to plenary resentencing and reopening the PSR as— Oh, no, no. I mean Moore is pretty clear on that and subsequent cases. Right. And so I think as far as the court was inclined to remand for clarification of that, I think it would be very clear that the judge was entitled to rely on the PSR's finding, which— a long finding. The defendant had many chances to address the application of the first-degree murder guideline here. Well, but it's not so much the application of the guideline. I mean, I understand they're making that argument. I don't quite see it. But again, that's Chapter 2, right? I'm wondering more about Chapter 5, when we get to 5G1.1, and you can have all these astronomical offense levels that would put you at 360 to life. But if we were not to agree with the government that the drug statutory max remains at life, but now B1A is a 5 to 40, the only thing that could trigger a statutory life sentence would be the murders, because the jury verdict was not specific. We've got to go with the lowest common denominator, which is a 25-year, meaning that the statutory max of the RICO remains at 20, meaning under 5G1.1, that 360 to life range gets pulled down and capped with a ceiling of 20. If that's the case, I guess that seems to be the question here. Right. And, Your Honor, I think the judge was very clear that given the scenario, given the people at the PSR, the acts of violence here were attributable both to Mr. Brown in terms of shooting people, and also the question of whether, as part of the RICO conspiracy, whether the facts of murder were foreseeable, and they clearly were. He had recruited young members of the gang to enforce the gang's territory. He had directed someone to shoot another gang member who happened to miss a school bus. Those kind of facts are still very, you know, serious. The judge took those very seriously. He made it clear that he was not accountable for the sentence at all. So if we were to remand hypothetically, and I guess this will be a question as far as defense as well, I think you were suggesting that something along the lines of a Jacobson or Crosby remand would be appropriate, that we would ask, we would, I guess, hypothetically point out the guidelines there to the district judge and ask, had you known that the properly calculated guideline range under Moore was 240 months, would you have imposed a materially or whatever, nontrivially different sentence? And if the answer was no, it's over. And if the answer is yes, the judge could then impose a different sentence. What is practically the difference about how that plays out as opposed to us, if we were, hypothetically, simply to vacate and remand? Keeping in mind that we're already in a world that is a limited consideration. The First Step Act calls for a very limited proceeding. It seems different from a sentencing where the difference is you only have a Jacobson remand or we're reopening to a plenary resentencing. Well, we know that First Step Acts are not plenary resentencings. Are we just making things a little bit more complicated than they need to be by making it a Jacobson-Crosby situation? Well, I think that the court, I think the government has an interest that if the court were to make clear that the judge, in the first instance, did not have to even recalculate the guidelines. The First Step Act says he may sentence as if. It's only if the judge decides to sentence as if that we start to get into a new look at the guidelines. So we would just ask that the court make clear that— So you're saying that the discretionary decision of the district court could precede the court's decision of whether to even follow the Moore procedure of recalculating the guidelines? If you're dealing with a defendant like this who's extremely violent or, you know, another defendant who has engaged in incredibly serious conduct as part of a drug operation to kill people, the judge shouldn't have to then jump to the proof of looking at the guidelines of the First Step Act. The statute says he may do that, but it doesn't require him. And Section 4 of the C section says nothing in this act requires him to be sentenced. So I think we would just want to make it very clear that a judge can just skip right back to the end point and say, look, I just don't think he should be serving any less time. He's not one of the defendants. I think the act was designed to benefit him. And you think a judge could say that saying, I don't even need to know what the Moore version of recalculated guidelines could be even if they wound up being 0 to 6, I don't care, this fellow's criminal history or whatever, whatever the reasons are, are so bad I would not exercise my discretion under any circumstances. But do we have that statement here? I guess that's – even if that's true, do we have the district judge saying even if they were 240 or even if they were whatever, 41 or 51, I would not – we don't have that statement. So you're just saying that if there were a remand here, you wouldn't want the opinion to suggest that he was required to do this exercise. Right. It would require a second to go in to kind of tabulate the guidelines or anything. Yeah, I mean the first – Does the fact that it wasn't – does the fact that it wasn't required, that it was just – it was discretionary on his part, does that affect the arguments about the gravitational pull and what we think about how it affects the sentence? I mean I can't get around the fact that what the judge thought he was doing was saying – he said in order to determine whether I'm going to give him a sentence reduction, I'm going to look at what would be the effect of the first step. The judge made that decision. It was discretionary decision. But the judge didn't do it, so that's what he said he was doing. I just – you know, so we're in that land, so I think if you do find that there's an error in terms of the ceiling, the statutory ceiling, I think whether the remand to ask the judge for it, at least the remand is clear that if – well, in so many cases, there's no requirement. But here, having done that, and this is the explanation today, would it have changed had you known that there was a 240 cap? If that's what the court determines. But again, I think the broader issue here is that Moore says that if you're going to sentence – if you're going to look at the effect of the First Step Act, then you have a very limited requirement to recalculate the value of the act. But the government believes that a judge – because there's so many of these motions, I think Congress is very careful not to impose these very kind of own-eraser or kind of re-sentencing-like proceedings for the judge. Other judges can just sigh and say, look, I know this has been – and I don't believe this deserves any reduction under the First Step Act. Can I ask you just one other question? I guess – I don't know if you're prepared to answer this or not. But how many of these are pending anymore in the district courts? My impression is that almost all of them have been resolved, and because unlike, say, the compassionate release ones where you can keep following with these, you can only file one, and upon complete review of the merits, you can no longer file another one. Sometimes I wonder, you know, how many cases are out there awaiting guidance from us, and how much is this completely water under the bridge at this late date? Do you have any sense of how many are pending in your district, if any? As a matter of fact, I focus on appellate matters. Sure. But I can try to provide the court with some data. No need, no need. I was just curious. So thank you very much for your argument. I appreciate it. Ms. Corbett, I don't know if you have any sense. And if you don't, that's fine. We weren't expecting that. But do you have any sense of whether there are any or many pending in your district? Well, I am a point of contact in the Northern District of New York for these requests, and I do, at the moment, have approximately 10 that are pending. Oh, you do? I will say that I have gotten additional inquiries based on the recent decision that found that dual object conspiracies are also eligible. So, you know, as the court makes decisions, more, you know, can be said. Okay. So that's helpful. Would you mind, and I hate to impose on you, but could you address the sequencing question that we were talking about just there with Moore about whether, as the government suggests, it would be perfectly appropriate for a district court to decide in the first instance, and I assume that's after determining eligibility, saying there are factors here which would lead me never to grant a sentencing reduction. Therefore, I need not engage in the exercise to begin with of recalculating the guidelines under Moore. What's your view on that? Well, I think that the directive under 404B and 404C is that the sentence is to be reconsidered as an exception to apply. So as part of that. Does it say that, though, or does it say the court may impose a reduced sentence as if? It doesn't. Does it say it must consider? It does say that. But it doesn't say it must consider this and then decide. It just says it may impose as if. And continuing on into 404C, it also says this decision must be made after a full review. So what Congress intended with a full review is probably left to a little more legislative research not completed for this argument. And there is none. There's no legislative history, even if you were interested. So your view would be embedded in the 404C requirement that there must be a complete review of the merits. Your argument would be that even though there are no specifications of what that phrase means, that in your view would necessarily include the Moore recalculation of the guidelines? That in addition to the use of the 3553A factors as guideposts, as members of the circuits have found, are relevant to this consideration. Why is that required by the language for a review? I mean, if he looks at the whole record and decides that he doesn't think a reduction is justified, why isn't that a full review? Well, as a member of the council, I would like to know what that review would tell just so that there would be a record for us to examine as to whether or not the determinations that the court gave were accurate and reliable. I just would like to just quickly speak to the court of recent decision in the Fourth Circuit. It's U.S.C. Simmons. And it addresses the relevant elements of Eureka conspiracy and what must be found. And it's in the context of the categorical analysis, although unrelated to those issues. It's under a examination of what a violent felony is. And it specifically finds that a defendant must have committed the bribery activity, as that term is defined under 1961, which is something that did not occur in this case. And I may follow this up on the 28th day letter. I request a complete vacation of the hearing for full consideration. Thank you very much to both counselors. Very well argued and very helpful. We will reserve decision. I think that brings us to a close today. We'd like to thank everyone for attending, both remotely and live. And we will now stand at recess. Thank you.